**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| HENRY DENNIS ADAMS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )　　　　1:12CV286 |
| | ) |
| CITICORP CREDIT SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Defendant's Motion to Compel Arbitration for Plaintiffs Adams, Whitfield, and Kraemer and to Stay Proceedings (Docket Entry 29) and Plaintiffs' Motion for Conditional Certification as a Collective Action pursuant to the Fair Labor Standards Act (Docket Entry 37).[1] For the reasons that follow, the Court will grant in part, defer in part, and deny in part Defendant's Motion to Compel and will grant Plaintiffs' Motion for Conditional Certification.

## I.  BACKGROUND

Four Plaintiffs (Henry Adams, Kelly Harrison, James Whitfield, and Katherine Kraemer) (collectively "Plaintiffs" or "Named Plaintiffs") initiated this action against Citicorp Credit Services, Inc. ("Citi") "on behalf of themselves and other similarly situated current and former hourly employees . . . for engaging in a systematic scheme of wage abuses against its hourly-

---

[1] The Parties consented to disposition of this case pursuant to 28 U.S.C. § 636(c).  (Docket Entry 67-1.)

paid customer service telephone operator employees working at Citi's call center located in Greensboro, North Carolina." (Docket Entry 23 at 1-2.)[2] Their Amended Complaint alleges that Citi:

(1) "fail[ed] to properly record and pay its hourly customer service telephone operator employees for 'off-the-clock' work and overtime" (id. at 2);

(2) "encourag[ed], requir[ed], and/or creat[ed] circumstances necessitating said employees to work off the clock" (id.);

(3) "requir[ed] said employees to improperly record their time records" (id.); and

(4) "encourag[ed] or requir[ed] said employees to work off the clock to conduct work-related activities, including time spent logging in and out of computer and telephone systems, attending mandatory meetings, and reading required materials necessary for the performance of their jobs" (id.).

Plaintiffs allege that, as a result of this "scheme" of wage abuses, Citi violated the federal Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA"). (Id. at 1-2.)

Citi subsequently filed the instant Motion to Compel. (Docket Entry 30.)[3] Plaintiffs responded (Docket Entry 47) and Citi

---

[2] Other putative plaintiffs since have opted into this action. (See Docket Entries 41-45, 49-56, 59-60, 62, 64, 69, 72.)

[3] Where page numbers in a document's CM/ECF footer (created at docketing) differ from the document's original internal pagination, pin cites refer to the page number(s) in the CM/ECF footer.

replied (Docket Entry 57).  In the same period, Plaintiffs filed the instant Motion for Conditional Certification (Docket Entry 37), as to which Citi responded (Docket Entry 63), Plaintiffs replied (Docket Entry 66), and Citi sur-replied (Docket Entry 68-1).

## II.  MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, establishes "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  Pursuant to the FAA, "agreements to arbitrate must be enforced . . . ." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).  In determining whether to compel arbitration, a court should consider:

> "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute."

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).  If a valid arbitration agreement covers the dispute at issue, the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

"'In the context of motions to compel arbitration brought under the [FAA] . . . courts apply a standard similar to that

applicable to a motion for summary judgment.'" Minter v. Freeway Food, Inc., No. 1:03CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004) (unpublished) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). Accordingly, the Court should compel arbitration "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In considering that issue, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

To decide if a party agreed to arbitrate a dispute, "the [C]ourt should apply 'ordinary state-law principles that govern the formation of contracts.'" Johnson v. Circuit City Stores, 148 F.3d 373, 377 (4th Cir. 1998) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under North Carolina law, "[a] valid contract requires [1] offer, [2] acceptance, [3] consideration and [4] no defenses to formation." Koltis v. North Carolina Dep't of Human Res., 125 N.C. App. 268, 271, 480 S.E.2d 702, 704 (1997) (citing Copy Prods., Inc. v. Randolph, 62 N.C. App. 553, 555, 303 S.E.2d 87, 88 (1983)). "North Carolina has a strong public policy favoring the settlement of disputes by

arbitration.  [Said] strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." <u>Johnston Cnty. v. R.N. Rouse & Co., Inc.</u>, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992).  However, "North Carolina law requires the party seeking to compel arbitration to demonstrate that both parties mutually agreed to arbitrate their disputes." <u>Minter</u>, 2004 WL 735047, at *3 (citing <u>Routh v. Snap-On Tools Corp.</u>, 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992)).

### A.  2011 Arbitration Policy

Citi argues that Plaintiffs Adams, Whitfield, and Kraemer have "agreed to individually arbitrate *any* claims relating to [their] employment with [Citi]."  (Docket Entry 30 at 2-3 (emphasis in original).)[4]  Furthermore, Citi alleges that, "[a]s part of their arbitration agreements, . . . these Plaintiffs waived any right to commence or participate in any class or collective action arising from [their] employment."  (<u>Id.</u> at 3.)

In January 2011, Citi promulgated an Employee Handbook ("2011 Handbook") which included its Employment Arbitration Policy ("Arbitration Policy").  (<u>Id.</u> at 4 (citing Docket Entry 29-2, ¶ 7; Docket Entry 29-3 at 2-6).)  The Arbitration Policy states:

> The Policy makes arbitration the <u>required and exclusive forum</u> for the resolution of <u>all disputes</u> (other than

---

[4] Citi acknowledges that "Plaintiff Harrison, who took a leave of absence effective May 2010 and did not return to [Citi,] . . . is not bound by this agreement and therefore is not subject to this Motion."  (Docket Entry 30 at 3 n.2 (internal citations omitted).)

disputes which by statute are not arbitrable) <u>arising out</u>
<u>of or in any way related to employment based on legally</u>
<u>protected rights</u> (i.e., statutory, regulatory,
contractual, or common-law rights) that may arise between
an employee or former employee and Citi . . . including,
without limitation, claims, demands, or actions under
. . . the Fair Labor Standards Act of 1938 . . . .

(Docket Entry 29-3 at 2 (emphasis added).)  It goes on to say that,

except where expressly prohibited by law, <u>arbitration on</u>
<u>an individual basis pursuant to this Policy is the</u>
<u>exclusive remedy</u> for any employment-related claims which
might otherwise be brought on a class, collective or
representative action basis. Accordingly, <u>employees may</u>
<u>not participate as a class or collective action</u>
<u>representative or as a member of any class, collective,</u>
<u>or representative action</u>, and will not be entitled to any
recovery from a class, collective, or representative
action in any forum.  Any disputes concerning the
validity of this class, collective, and representative
action waiver will be decided by a court of competent
jurisdiction, not by the arbitrator.

In the event this waiver is found to be unenforceable,
then any claim brought as a class, collective, or
representative action basis must be filed in a court of
competent jurisdiction, and such court shall be the
exclusive forum for all such claims.

(<u>Id.</u> at 3 (emphasis added).)

Citi has tendered evidence that Plaintiffs Whitfield and
Kraemer executed electronic acknowledgments of the 2011 Handbook on
January 3, 2011, and February 17, 2011, respectively.  (Docket
Entry 29-2, ¶¶ 9-10 (citing Docket Entry 29-4 at 2 and Docket Entry
29-5 at 2).)  The acknowledgments not only specifically mention
that the "Arbitration Policy . . . require[s] [the employee] to
subject employment-related disputes to binding arbitration," but
also indicates that the employee bears the "obligation to read

these documents carefully, and that no provision in [the] Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of Citi's right to compel arbitration of employment-related disputes."  (Docket Entry 29-4 at 2; Docket Entry 29-5 at 2.)  Finally, the acknowledgments state: "<u>WITH THE EXCEPTION OF THE EMPLOYMENT ARBITRATION POLICY, YOU UNDERSTAND THAT NOTHING CONTAINED IN THIS HANDBOOK, NOR THE HANDBOOK ITSELF, IS CONSIDERED A CONTRACT OF EMPLOYMENT.</u>"  (Docket Entry 29-4 at 2; Docket Entry 29-5 at 2 (emphasis in original).)

## B.  Plaintiff Adams

Citi admits that Plaintiff Adams "did not execute an acknowledgement" of the 2011 Handbook.  (<u>See</u> Docket Entry 30 at 5.) It contends, however, that he did acknowledge receipt of the 2009 Employee Handbook ("2009 Handbook") (which contention Plaintiffs do not dispute (<u>see</u> Docket Entry 47 at 19-20)) and that the 2009 Handbook "advised [him] of [Citi's] right to amend the Arbitration Policy and that continuation of employment would be deemed acceptance of any such amendment, including the class action waiver contained in the 2011 [] Handbook."  (Docket Entry 30 at 5.)  The provision of the 2009 Handbook referenced by Citi states:

> Citi reserves the right to revise, amend, modify, or discontinue the [Arbitration] Policy at any time in its sole discretion with 30 days' written notice.  Such amendments may be made by publishing them in the Handbook or by separate release to employees and shall be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only. *Your continuation of employment after receiving such*

7

*amendments shall be deemed acceptance of the amended terms.*

(Docket Entry 29-8 at 6 (emphasis in original).) The 2009 Handbook also includes this language: "Except as otherwise required by applicable law, this [Arbitration] Policy applies only to claims brought on an individual basis. Consequently, neither Citi nor any employee may submit a class action, collective action, or other representative action for resolution under this Policy." (Id. at 2.) Citi does not argue that the Court could compel arbitration as to Plaintiff Adams under the 2009 Arbitration Policy. (See Docket Entry 30 at 10-11; Docket Entry 57 at 11.) Rather, it contends that "[Plaintiff] Adams acknowledged receipt of the 2009 [] Handbook and Arbitration Policy, which expressly permitted Citi to amend the Policy's terms" and that his "continued employment after promulgation of the 2011 Arbitration Policy sufficiently establishes his acceptance of its terms, including the collective action waiver." (Docket Entry 30 at 12; Docket Entry 57 at 12.)

Under North Carolina law, "unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." Walker v. Westinghouse Elec. Corp., 77 N.C. App. 253, 259-60, 335 S.E.2d 79, 83-84 (1985) (citations omitted). Although a contract "may be supplemented by additional agreements which are enforceable," Martin v. Vance, 133 N.C. App. 116, 121, 514 S.E.2d 306, 309 (1999), before such additions can become valid, "there must be a mutual agreement

8

between the parties as to the terms," id. Evidence that an
employee received notice of the agreement and thereafter continued
employment suffices. See Hightower v. GMRI, Inc., 272 F.3d 239,
242 (4th Cir. 2001) (construing North Carolina law); see also
Robbins-Hutchens v. Liberty Hardware Mfg. Corp., No. 1:01CV46, 2001
WL 823495, at *3 (M.D.N.C. June 14, 2001) (unpublished) ("The North
Carolina Court of Appeals has found that an employee with notice of
a dispute resolution program assents to the program by continuing
in her employment."); Howard v. Oakwood Homes Corp., 134 N.C. App.
116, 121, 516 S.E. 2d. 879, 882 (1999) (finding evidence sufficient
to show "[the] plaintiff knew that the terms of the [arbitration
agreement] would apply to her should she continue in her
employment, and that by doing so, [the] plaintiff mutually assented
to the program").

Citi asserts that it "promulgated the 2011 [] Handbook to all
of its active employees in December 2010 and January 2011."
(Docket Entry 30 at 5 (citing Docket Entry 29-2, ¶ 8 ("[Citi]
provided access to the 2011 [] Handbook to all of its active
employees in the months of December 2010 and January 2011."))).)
Notably, Citi does not describe such promulgation other than to say
that it occurred "in accordance with [Citi's] usual practices and
procedures." (Id. at 11.) The 2009 Handbook states that
"amendments may be made by publishing them in the Handbook or by
separate release to employees . . . ." (Docket Entry 29-8 at 6.)

Plaintiffs contend that Citi "has not produced any proof that [Plaintiff] Adams ever received [the 2011 Handbook] or was in any way informed of its contents" (Docket Entry 47 at 19), although they do not explicitly deny that Plaintiff Adams received the 2011 Handbook (see id. at 19-20). In support of its Motion to Compel, Citi submitted a declaration by "a Human Resources Risk & Control Director for [Citi]." (Docket Entry 29-2, ¶ 1.) That declaration states: "Plaintiff Adams was employed by [Citi] at its Greensboro, North Carolina call center from December 6, 2004 to January 15, 2011." (Id. ¶ 4 (emphasis added).) The foregoing statement thus concedes that Plaintiff Adams's employment at Citi ended during the period when Citi alleges it provided its employees with the 2011 Handbook (see Docket Entry 30 at 5 ("[Citi] promulgated the 2011 [] Handbook to all of its active employees in December 2010 and January 2011."); see also Docket Entry 29-2, ¶ 8 ("[Citi] provided access to the 2011 [] Handbook to all of its active employees in the months of December 2010 and January 2011.")).

Viewing the evidence in a light most favorable Plaintiffs (as required at this stage, see Matsushita, 475 U.S. at 587), a reasonable fact-finder could determine that Plaintiff Adams did not receive notice of the 2011 Handbook containing the amendment to the Arbitration Policy implementing the collective action waiver before his employment with Citi ended. Accordingly, a material question of fact exists concerning whether Plaintiff Adams agreed to waive

his right to collective action in favor of submitting this dispute to individual arbitration, thus requiring resolution of that issue by trial, <u>see</u> 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); <u>Minter</u>, 2004 WL 735047, at *2 ("[W]hen a question of fact arises as to the presence of an agreement to arbitrate, the issue may not be determined on the affidavits; rather a trial . . . is required.").[5]

## C.  Waiver of Collective Action "Right"

Plaintiffs Kraemer and Whitfield do not contest the existence of an agreement to arbitrate; rather, they challenge the enforceability of the collective action waiver (<u>see</u> Docket Entry 47 at 8-19), which challenge, if successful, would require, according to the 2011 Handbook, that "any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction" (Docket Entry 29-3 at 3).  In support of this argument, Plaintiffs assert that "collective action is an integral and fundamentally *substantive* element of the FLSA that cannot be subject to waiver."  (Docket Entry 47 at 8 (emphasis in original).)  Citi responds that "collective action . . . is simply

---

[5] "If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue."  9 U.S.C. § 4.  Because Plaintiff Adams did not timely demand a jury trial on this issue (<u>see</u> Docket Entry 47), he waived any such right, <u>see</u> <u>Starr Elec. Co., Inc. v. Basic Const. Co.</u>, 586 F. Supp. 964, 967 (M.D.N.C. 1982).

a procedural mechanism that an employee may agree to forego"
(Docket Entry 57 at 4) and that "policy concerns, 'however
worthwhile, cannot undermine the FAA'" (id. at 7 (quoting Coneff v.
AT&T Corp., 673 F.3d 1155, 1159 (9th Cir. 2012))).

The United States Court of Appeals for the Fourth Circuit
previously addressed the question of the enforceability of a class
action waiver under the FLSA and ruled the waiver enforceable in
that case.  Adkins, 303 F.3d at 503.  However, Plaintiffs here
argue that the plaintiff in Adkins "failed to show a Congressional
intent to require courtroom resolution of FLSA [collective action]
claims" (Docket Entry 47 at 16 (citing Adkins, 303 F.3d at 506)),
whereas they (in contrast) "have presented textual and intent-based
arguments that were neither *before* the *Adkins* panel, nor considered
by that court" (id. (emphasis in original)).  Assuming that the
Court could reach a different conclusion than the one Adkins would
appear to dictate, Plaintiffs' position nonetheless lacks merit.

In that regard, Plaintiffs cite the following language in the
FLSA as support for their challenge to the instant waiver:

> "An action to recover the liability prescribed in either
> of the preceding sentences [regarding failure to pay
> minimum wage or overtime and liquidated damages] may be
> maintained against any employer . . . by any one or more
> employees for and in behalf of himself or themselves and
> other employees similarly situated."

(Docket Entry 47 at 8 n.2 (quoting 29 U.S.C. § 216(b)) (brackets in
original).)  Recently, the United States Court of Appeals for the
Eleventh Circuit exhaustively (and convincingly) analyzed this same

statutory language in light of United States Supreme Court decisions from analogous contexts, <u>Walthour v. Chipio Windshield Repair, LLC</u>, 745 F.3d 1326, 1330-35 (11th Cir.) (discussing <u>American Express Co. v. Italian Colors Rest.</u>, 570 U.S. ___, 133 S. Ct. 2304 (2013), <u>CompuCredit Corp. v. Greenwood</u>, 565 U.S. ___, 132 S. Ct. 665 (2012), and <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991)), <u>cert. denied</u>, ___ U.S. ___, 134 S. Ct. 2886 (2014), and, "based on th[o]se Supreme Court decisions read together, [] conclude[d] that the text of [the] FLSA [] does not set forth a non-waivable substantive right to a collective action," <u>id.</u> at 1335.[6] Other courts (nearly uniformly) have reached the same conclusion. <u>See, e.g.</u>, <u>D.R. Horton, Inc. v. National Labor Relations Bd.</u>, 737 F.3d 344, 357-60 (5th Cir. 2013); <u>Sutherland v. Ernst & Young LLP</u>, 726 F.3d 290, 295-97 (2d Cir. 2013); <u>Owen v. Bristol Care, Inc.</u>, 702 F.3d 1050, 1052 (8th Cir. 2013).[7]

---

[6] Moreover, the Supreme Court has recognized that employees cannot waive the FLSA's guarantees of minimum wages, overtime, and liquidated damages because such action "would nullify the purposes of the Act." <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 707 (1945). The Supreme Court, however, did not identify enforcement through collective action as one of the nonwaivable "rights." <u>See id.</u> "Additionally, [like the Eleventh Circuit, this Court] agree[s] with the Eighth Circuit's reasoning in [another recent decision], that 'even assuming Congress intended to create some "right" to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well.'" <u>Walthour</u>, 745 F.3d at 1335 (quoting <u>Owen v. Bristol Care, Inc.</u>, 702 F.3d 1050, 1052-53 (8th Cir. 2013)) (internal brackets omitted).

[7] Plaintiffs relied on the textual analysis employed in the
(continued...)

In addition to their textual argument, Plaintiffs point to one item in the Congressional Record, which states in relevant part:

> "If there shall occur violations . . ., the employees can themselves, or by designated agent or representatives, maintain an action in any court to recover the wages due them and . . . [the court] shall [] allow a reasonable attorney's fees and assess the court costs against the violator of the law so that employees will not suffer the burden of an expensive lawsuit. The provision has the further virtue of minimizing the cost of enforcement by the Government. It is both a common-sense and economical method of regulation. . . . [T]he provision which I have mentioned puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights, thus avoiding the assumption by Government of the sole responsibility to enforce the act."

(Docket Entry 47 at 11-12 (quoting 83 Cong. Rec. 9264 (1938)).)

Although Plaintiffs argue that this statement shows that "the right to collective action . . . was an indispensable aspect of the enforcement provision Congress included in the FLSA" (id. at 12), the statement actually highlights the importance of the _private right of action_ the FLSA grants employees (whether brought individually or collectively) (see id.). Simply put, the legislative history cited by Plaintiffs does not establish that Congress intended to preclude waiver of collective action under the

---

[7](...continued)
subsequently reversed decisions of Raniere v. Citigroup, Inc., 827 F. Supp. 2d 294 (S.D.N.Y. 2011), rev'd, 533 F. App'x 11 (2d Cir. 2013) (citing Sutherland, 726 F.3d at 296), and Owen v. Bristol Care, Inc., No. 11-04258-CV-FJG, 2012 WL 1192005 (W.D. Mo. Feb. 28, 2012) (unpublished), rev'd, 702 F.3d 1050 (8th Cir. 2013). (See Docket Entry 47 at 9.) As stated above, the Court adopts the well-reasoned view of those appellate courts, rather than the position taken in the now-rejected district court decisions.

FLSA.  See Torres v. United Healthcare Servs., 920 F. Supp. 2d 368, 376 (E.D.N.Y. 2013) ("This scant legislative history is not at all persuasive that Congress intended the right to participate in an FLSA collective action to be an unwaivable right.  If anything, the legislative history makes clear that Congress amended the FLSA for the specific purpose of adding a requirement that an employee take the affirmative step of opting-in before he can avail himself of the right to participate in a collective action.").

Plaintiffs focus most of their argument on the purpose of the FLSA, asserting that "the ability to seek collective redress . . . is an enforcement remedy necessary to effectuate the broader public policy goals underlying the FLSA" (Docket Entry 47 at 11), namely "'protect[ion of] certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce'" (id. at 10 (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945))).  Collective action provisions certainly exist to promote specific policy objectives:

> "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).

15

However, the policy rationale for collective action does not trump the "national policy favoring arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). See Adkins, 303 F.3d at 503 ("[An] inability to bring a class action . . . cannot by itself suffice to defeat the strong congressional preference for an arbitral forum."); see also Walthour, 745 F.3d at 1335 ("[A]fter reviewing the purposes of the FLSA, we conclude that the enforcement of collective action waivers in arbitration agreements is also not inconsistent with the FLSA.").[8]

Put another way, "'simply because judicial remedies are part of a law does not mean that Congress meant to preclude parties from bargaining around their availability.'" Adkins, 303 F.3d at 503 (quoting Johnson v. West Suburban Bank, 225 F.3d 336, 377 (3d Cir. 2000)). Plaintiffs Whitfield and Kraemer agreed to submit all

_____

[8] As noted above, Plaintiffs describe "the ability to seek collective redress . . . [as] an enforcement remedy necessary to effectuate the broader public policy goals underlying the FLSA." (Docket Entry 47 at 11 (emphasis added).) Even accepting that characterization, an "enforcement remedy" exists to vindicate a litigant's substantive statutory rights and, "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). Plaintiffs have failed to offer any evidence that they could not vindicate their rights in an individual arbitral forum. (See Docket Entry 47.) That failure dooms their position. (See generally Adkins, 303 F.3d at 503. Finally, the Supreme Court has held "that the 'effective vindication doctrine' cannot be used to invalidate class-action waiver provisions in circumstances where the recovery sought is exceeded by the costs of individual arbitration . . . ." Sutherland, 726 F.3d at 298 (citing American Express, 570 U.S. at ___, 133 S. Ct. at 2310-11).

employment-related disputes to arbitration and to forego redress via collective-action procedures. Nothing in that agreement frustrates the purpose of the FLSA; however, rendering that agreement unenforceable would frustrate the purpose of the FAA. The Court thus declines to find the instant waiver unenforceable.[9]

### D. Prospective Application of Waiver

Next, Plaintiffs argue that the instant waiver does not apply here because "much of the conduct forming the basis of this suit occurred in 2010 before the waiver went into effect." (Docket Entry 47 at 4.) They rely on language from the 2009 Employee Handbook, which states that "amendments . . . will apply prospectively only." (Id. at 4-5 (quoting Docket Entry 29-8 at 6).) They further contend that, "[s]ince this case involves a waiver of the right to proceed collectively, the rules of construction for arbitration agreements should not be applied . . . ." (Id. at 7.) These arguments lack merit.

---

[9] After briefing ended, Plaintiffs identified <u>Brown v. Citicorp Credit Servs., Inc.</u>, No. 1:12CV62BLW, 2013 WL 645942 (D. Idaho Feb. 21, 2013) (unpublished), as support for their position opposing arbitration (<u>see</u> Docket Entry 77); however, the Court does not find that decision (which relied on the National Labor Relations Board ruling rejected by the Fifth Circuit in the above-cited <u>D.R. Horton</u> case) persuasive and notes that, after the United States Court of Appeals for the Ninth Circuit criticized the foregoing <u>Brown</u> decision, <u>see</u> <u>Richards v. Ernst & Young, LLP</u>, 744 F.3d 1072, 1075 n.3 (9th Cir. 2013), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 355 (2014), the <u>Brown</u> Court agreed to reconsider it, <u>see</u> <u>Brown v. Citicorp Credit Servs., Inc.</u>, No. 1:12CV62BLW, 2014 WL 1795702 (D. Idaho May 6, 2014) (unpublished).

As to Plaintiffs' latter point, the prohibition on collective action lies in the section of the Arbitration Policy entitled "Scope of Policy" (see Docket Entry 29-3 at 2-3) and states that "arbitration on an individual basis pursuant to this Policy is the exclusive remedy for any employment-related claims which might otherwise be brought on a class, collective or representative action basis" (id. at 3). This waiver defines the scope of the arbitration policy. The Court thus will resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration . . . ." Moses H. Cone, 460 U.S. at 24-25.

Regarding the issue of what claims fall under the Arbitration Policy, its plain language "makes arbitration the required and exclusive forum for the resolution of all disputes . . . arising out of or in any way related to employment based on legally protected rights . . . ." (Docket Entry 29-3 at 2 (emphasis added).) "Th[is] language is broad enough to encompass all agreements and any disputes, **past and present**, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." Levin v. Alms & Assocs., Inc., 634 F.3d 260, 267 (4th Cir. 2011) (bold emphasis added) (italics in original) (citing AT&T Techs. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)).

Moreover, the Arbitration Policy calls for arbitration of employment "disputes" (see Docket Entry 29-3 at 2) and the language

concerning collective action describes "claims" (id. at 3).  This distinction indicates that the collective action waiver's prospective application language refers to proceedings (i.e., claims) rather than to the underlying conduct (i.e., disputes). The instant proceedings commenced well after Citi promulgated the version of the Arbitration Policy that includes the collective action waiver.  Accordingly, that waiver applies to this case.

In sum, the Court finds that the conduct at issue falls within the scope of the Arbitration Policy and therefore will grant Citi's Motion to Compel as to Plaintiffs Kraemer and Whitfield.

### E.  Stay

Citi requests that the Court stay the instant proceeding as to all Plaintiffs (present and future) who are subject to the 2011 Arbitration Policy, although it "agrees . . . that this proceeding should be allowed to move forward with respect to Plaintiff Harrison and any other opt-in plaintiffs who are not subject to the 2011 Policy."  (Docket Entry 57 at 11.)  Rather than proceed in that fashion, the Court will allow Citi to move to compel arbitration as to any opt-in plaintiffs who (though subject to the 2011 Arbitration Policy) resist arbitration in the face of this Order.  The Court thus will deny without prejudice Citi's Motion to Stay as to any parties other than Plaintiffs Kraemer and Whitfield.

## III. MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION

The FLSA permits an employee to bring an action for unpaid minimum or overtime wages "on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). It further states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. As a result, certification under the FLSA requires: "(1) that the class be 'similarly situated,' and (2) that the plaintiffs 'opt in' by filing with the court their consent to suit." Yerger v. Liberty Mut. Grp., Inc., No. 5:11-CV-238-D, 2011 WL 5593151, at *3 (E.D.N.C. Nov. 15, 2011) (unpublished).

Courts generally address the "similarly situated" inquiry in a two-step process:

> First, the court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class. If they are, notice is sent and new plaintiffs are permitted to "opt in" to the lawsuit. Second, after discovery is largely complete and more information on the case is available, the court makes a final determination of whether all plaintiffs are sufficiently similarly situated to proceed together in a single action.

Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (internal citations omitted).

The Parties in this case dispute the standard the Court should use in assessing the "similarly situated" element for purposes of the initial conditional certification. (Compare Docket Entry 38 at

12-14, <u>with</u> Docket Entry 63 at 15-23.)  Plaintiffs argue that the "threshold to obtain conditional certification is low" and that they "need only make a modest factual showing" to obtain such certification.  (Docket Entry 38 at 12 (internal citations and quotation marks omitted).)  Citi, on the other hand, challenges Plaintiffs' proposed standard as "toothless," as well as inconsistent with "the policies underlying [the FLSA and thus asks] the Court [to] reject it in favor of a meaningful standard requiring evidence of a common, allegedly unlawful, policy or practice susceptible to common proof."  (Docket Entry 63 at 16.)

After reviewing the relevant case law, this Court concludes that, at this stage, the "similarly situated" requirement, although certainly not a "rubber-stamp approach," remains relatively modest. <u>See, e.g.</u>, <u>LaFleur v. Dollar Tree Stores, Inc.</u>, Civil Action No. 2:12-cv-00363, 2012 WL 4739534, at *3 (E.D. Va. Oct. 2, 2012) (unpublished) ("[The conditional certification] determination is made using a fairly lenient standard, because the court, and the parties, have minimal evidence at this point in the proceedings." (internal citations and quotation marks omitted)); <u>Yerger</u>, 2011 WL 5593151, at *4 ("The standard for determining similarity at this initial stage is not particularly stringent . . . .'" (quoting <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1214 (11th Cir.

2001)).[10]  At the same time, courts in this Circuit have held that "[m]ere allegations will not suffice; some factual evidence is necessary."  Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).  However, even applying that standard,

> plaintiffs generally need only make a relatively modest factual showing that [] a common policy, scheme, or plan [that violated the law] exists.  To meet this burden and to demonstrate that potential class members are similarly situated, [p]laintiffs must set forth more than vague allegations with meager factual support regarding a common policy to violate the FLSA.  Their evidence need not, however, enable the court to determine conclusively whether a class of similarly situated plaintiffs exists, and it need not include evidence that the company has a formal policy of refusing to pay overtime.

Mitchel v. Crosby Corp., Civil Action No. DKC 10-2349, 2012 WL 4005535, at *2-3 (D. Md. Sept. 10, 2012) (unpublished) (internal citations and quotation marks omitted).  Furthermore, "[a]t this first stage of [FLSA collective action] certification . . . the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations."  Fisher v. Michigan Bell Tel. Co., 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009).

_____

[10] Some courts undertake a more stringent "similarly situated" inquiry (more in line with Citi's proposal) at the conditional certification stage, see, e.g., Bunyan v. Spectrum Brands, Inc., No. 07-CV-0089-MJR, 2008 WL 2959932, at *3-4 (S.D. Ill. July 31, 2008) (unpublished), or even collapse the two-step inquiry into one, see, e.g., Basco v. Wal-Mart Stores, Inc., No. Civ.A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (unpublished), where the parties have conducted at least some discovery.  No discovery has occurred yet in the instant case, thus the Court finds a heightened or intermediate standard inappropriate.

Named Plaintiffs in this case have sufficiently shown that the members of their proposed class are similarly situated for purposes of conditional certification. Generally, they have proposed a putative class of "all customer service telephone operator employees who work or worked at Citi's Greensboro, North Carolina call center facility from March 22, 2009 through the present[.]" (Docket Entry 38 at 5 (internal footnote omitted).) In support of conditional certification, Plaintiffs submitted their own declarations, each stating that Citi required them to track their time using the phone system, which failed to record certain work performed at the beginning and end of each shift.

Moreover, Plaintiff Adams asserted in his declaration that all of the customer service telephone operators worked in adjoining cubicles and all used the same equipment (including telephones and computers/computer systems). (Docket Entry 38-2 at 2-3.) He further stated that he was "'on the clock' based on when [he] was logged in to Citi's phone system . . . [and] was only paid for the time that [he] was logged in to the phone system." (Id. at 3.) He averred that Citi "expected [him] to be ready to accept [incoming] calls" when logged into the telephone system or he would "be reprimanded for dereliction of duties." (Id. at 3-4.) To meet those demands, Plaintiff Adams had to go through a number of steps prior to logging onto the telephone system at the beginning of his

shift and after he had logged off the telephone system at the end of his shift, including:

(1)  getting his computer "up and running" at the beginning of his shift (id. at 4);

(2)  "logg[ing] in to the computer network, and . . . open[ing] various computer programs that contained the information and resources [he] needed to properly respond to incoming calls" (id.);

(3)  reading "numerous daily 'alerts' from Citi that were critical to [] being able to respond to incoming calls" (id.); and

(4)  "closing [] open computer programs and logging out of the network" at the end of his shift (id.).

Plaintiff Adams estimated he spent approximately fifteen minutes at the beginning of each shift and five minutes at the end of each shift (a total of twenty minutes per shift) "opening and closing computer programs, logging in and out of the computer network and reading alerts during time that was not recorded by Citi." (Id. at 4-5.)  The other Plaintiffs' declarations set forth nearly identical facts.  (See Docket Entries 38-3, 38-4, 38-5.)

Citi denies the existence of a common, allegedly unlawful policy requiring employees to work off the clock without pay (Docket Entry 63 at 23-31) and asserts that the putative class members lack the capacity to establish their claims through common proof (id. at 32-36).  As to the first argument and supporting

24

evidence, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations" at the conditional certification stage. <u>Fisher</u>, 665 F. Supp. 2d at 826. Furthermore, the fact that Citi had a written policy requiring that employees record any overtime work and prohibiting off-the-clock work does not defeat Plaintiffs' claims, particularly at this stage. <u>See, e.g.</u>, <u>Blakes v. Illinois Bell Tel. Co.</u>, No. 11 CV 336, 2011 WL 2446598, at *5 (N.D. Ill. June 15, 2011) (unpublished); <u>Pereira v. Foot Locker, Inc.</u>, 261 F.R.D. 60, 67 (E.D. Pa. 2009). Plaintiffs have provided sufficient evidence to support their contention that Citi had a practice of requiring customer service representatives to perform work-related tasks before and after they logged into and out of the time-keeping system. (<u>See</u> Docket Entry 38-2 at 3-4 (describing "expect[ations] to be ready to accept [incoming] calls" once logged into the telephone system, or face "reprimand[] for dereliction of duties"); <u>see also</u> Docket Entry 38-3 at 3-4 (same); Docket Entry 38-4 at 3-4 (same); Docket Entry 38-5 at 3-4 (same).)

To support its claim that Plaintiffs will not be able to establish their case through common proof, Citi argues that "Plaintiffs' claims [] would involve varying testimony depending on the period of time in question; the particular department at issue; the relevant timekeeping system; the employee's individual practices; and the relevant manager's expectations." (Docket Entry

63 at 32.) A large part of this argument involves Citi's contention that only some employees (namely "customer service telephone operators") at the call center tracked their time via a telephone system. (Id. at 10-14.) Citi understandably focuses on that point because, although (as noted above) Plaintiffs generally refer to their putative class as "customer service telephone operators" (see Docket Entry 38 at 20), at other points, they appear to seek conditional certification for a class that includes other types of call center employees (see Docket Entry 66 at 16 ("Named Plaintiffs rely on more than just the telephone being the time clock to support conditional certification for *all* employees at the Greensboro call center . . . ." (emphasis in original))).

Plaintiffs' evidence, however, does not support any such broader class. Each Named Plaintiff declared that the telephone system (which all customer service telephone operators shared) recorded his or her time (Docket Entry 38-2 at 3; Docket Entry 38-3 at 3; Docket Entry 38-4 at 3; Docket Entry 38-5 at 3) and that said time recording procedure excluded time spent performing work-related activities (Docket Entry 38-2 at 3; Docket Entry 38-3 at 3; Docket Entry 38-4 at 3; Docket Entry 38-5 at 3). The broad allegation that "[i]t is Citi's policy and practice not to pay call center employees for [preparatory] work time, and consequently call center employees are consistently working 'off the clock' and without pay" (Docket Entry 23 at 10), without factual support, does

not support conditional certification of a class that includes all employees working in the Greensboro call center, regardless of their time-keeping system. The Court thus will limit the class to those employees who used the telephone system to track their time, thereby mooting the bulk of Citi's challenge to Plaintiffs' proof.

The rest of Citi's argument concerning the nature of Plaintiffs' proof is "not meaningful to the [C]ourt at this stage of its analysis in light of the minimal showing plaintiffs are required to make at this stage." In re Bank of Am. Wage and Hour Emp't Litig., 286 F.R.D. 572, 586 (D. Kan. 2012) (citing Vargas v. General Nutrition Ctrs., Inc., No. 2:10-cv-867, 2012 WL 3544733, at *7-8 (W.D. Pa. Aug. 17, 2012) (unpublished), and Pereira, 261 F.R.D. at 66-67); see also Blakes, 2011 WL 2446598, at *5 ("[T]o the extent there are individual variances in time worked or damage computation, it is standard in FLSA cases for the claims to proceed through representational discovery."). Plaintiffs have made a sufficient showing to warrant conditional certification of a class of employees defined as: all customer service telephone operator employees who worked at Citi's Greensboro, North Carolina call center facility after March 22, 2009, who used the telephone system to record their time.[11]

---

[11] The FLSA imposes a three-year limitation. 29 U.S.C. § 255(b). Therefore, the class may date back to March 22, 2009, i.e., three years prior to the filing of this action.

27

## IV. NOTICE

The FLSA "manifests a preference that when collective action certification is granted, a court-controlled notice be provided to potential putative plaintiffs, rather than permitting unregulated solicitation efforts to secure joinder by those individuals." Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009). The Court thus holds a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71 (1989) (addressing parallel provision of Age Discrimination in Employment Act, 29 U.S.C. § 216(b)). Plaintiffs request that the Court "order[] Citi to provide to Plaintiffs within thirty (30) days of the Court's Order [granting Plaintiffs' Motion for Conditional Certification], in an electronic format that can be utilized with a mail-merge program [], the name, last known address, telephone numbers, and email address of each [potential plaintiff]." (Docket Entry 38 at 19.) They further ask that the Court approve their proposed Notice of Conditional Certification ("Notice") (Docket Entry 38-8) and Consent to Join Form ("Consent Form") (Docket Entry 38-9) "for circulation to the proposed class" and "order Citi to publish [the Notice and Form] on Citi's website[] and to post [them] at conspicuous locations at the call center." (Docket Entry 38 at 20.) Citi contests Plaintiffs' request for the telephone numbers

28

and email addresses of the proposed class members, asks that the Court "impose a customary 60-day opt-in deadline," and requests that a third party administer notice once the Parties have had a chance to discuss and amend Plaintiffs' proposed Notice. (Docket Entry 63 at 36.) Plaintiffs's reply does not address these issues raised by Citi. (<u>See</u> Docket Entry 66 at 2-16.)

The Court will direct the Parties to attempt to reach an accommodation regarding these matters.

V.  CONCLUSION

Plaintiffs Kraemer and Whitfield agreed to arbitrate all claims against Citi and also agreed to waive their right to participate in a collective action; therefore, they must proceed to individual arbitration. A material question of fact, however, exists as to whether Plaintiff Adams so agreed. Finally, Plaintiffs have met their burden for conditional certification as to a particular class of employees.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration for Plaintiffs Adams, Whitfield, and Kraemer and to Stay Proceedings (Docket Entry 29) is **GRANTED IN PART, DEFERRED IN PART, AND DENIED WITHOUT PREJUDICE IN PART,** in that Plaintiffs Whitfield and Kraemer must submit to arbitration, that any determination as to Plaintiff Adams must proceed to trial on the issue of an agreement to arbitrate, and that no stay will issue at this time as to anyone other than Plaintiffs Whitfield and Kraemer.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Conditional Certification as a Collective Action pursuant to the Fair Labor Standards Act (Docket Entry 37) is **GRANTED** in that the Court will conditionally certify a class defined as "all customer service telephone operator employees who worked at Citi's Greensboro, North Carolina call center facility after March 22, 2009 and used the telephone system to record their time."

**IT IS FURTHER ORDERED** that, on or before April 20, 2015, the Parties shall file a Joint Status Report regarding their efforts to agree on a notification plan, Notice of Conditional Certification, and Consent to Join Form, including their joint or individual proposals for such matters.

      /s/ L. Patrick Auld      
**L. Patrick Auld**
**United States Magistrate Judge**

March 20, 2015